The next case is Doe v. Garland. We're hearing Doe v. Garland and Doe v. Decker in tandem this morning. Thank you. I present petitioner John Doe, who is sitting right here in the courtroom today. Mr. Doe supplied information to federal law enforcement agencies to aid in the prosecution of one of Mexico's most notorious drug cartels, Cartel Jalisco Nueva Generacion, or CJNG. Mr. Doe's removal to Mexico has been ordered, and because of his cooperation with law enforcement, he now faces torture or even death at the hands of the CJNG if forced to return to Mexico. How would they know he was there? I'm sorry. I was just going to ask you whether the evidence is sufficient to require us to reverse, overturn the conclusion of the immigration BIA. Yes, Your Honor, it is sufficient. First, turning to the likelihood of torture prong under the CAT, it's undisputed that Mr. Doe informed on his co-defendants. The BIA expressly found that these co-defendants were affiliated with the CJNG, and it's undisputed that the CJNG relentlessly pursues informants and retaliates against them. And that alone compels the conclusion he'll be tortured by the CJNG. As to the acquiescence prong... Excuse me, and that information was presented to the immigration judge? Yes, and the BIA in fact expressly found the co-defendants were affiliated with the CJNG, and the IJ found the testimony related to Mr. Doe being an informant to be credible, and that was undisputed by the government. So I think what Judge Sack is asking is the standard that we must apply to the IJ's finding and the BIA's finding is substantial evidence. It's a high standard and it's very differential. So I need you to tell me how we can abide with the standards required and still grant review to your client. Yes, Your Honor, we have undisputed evidence in the record that Mr. Doe has been threatened. He's been labeled a rat by CJNG-affiliated individuals. He's been told he should be or he will be repentant if he informs on the cartel. A co-defendant has asked for help in dealing with Doe, and we also have substantial evidence from the country conditions report of Dr. Jones, the expert that the CJNG kills informants. The Fifth Circuit took up a nearly identical case involving a petitioner seeking relief under the Convention Against Torture, Aguado Cuevas v. Garland, and also found the CJNG routinely kills debtors and informants. The BIA found that they couldn't rely on Dr. Jones' report because she never interviewed John Doe himself. What do you make of that? This is legal error, Your Honor. The IJ below said that she was giving limited weight to the conclusions of Dr. Jones but was giving full weight to his report. However, she didn't specify which conclusion she was giving limited weight to. For example, the ultimate conclusion, which is that Mr. Doe is very likely to face torture if he returns to Mexico, versus the more granular conclusions, such as the CJNG is on an expansionary track or that the CJNG has infiltrated law enforcement. But in other contexts, we allow doctors, for instance, in a Social Security case, to testify without ever meeting the claimant based on the records, based on all the medical records. Isn't that similar to this? Yes. An interview was not necessary, Your Honor. You're correct. Here, Dr. Jones' ultimate conclusions did not require an interview with Doe. He determined that Doe was very likely to face torture in Mexico based on the fact that he had cooperated with law enforcement, that he had visible tattoos, that he was a male of military age, that he had strong ties to the U.S., and that he was a defector for refusing to lie. All of those are independently corroborated with other parts of the record. The IJ said that the doctor didn't interview the petitioner, but also throughout the opinion noted other problems with the IJ's, I mean, with the doctor's conclusions, so a lack of background-supporting evidence. For instance, as to whether Doe was likely to be subjected to a forced recruitment, the IJ says there's no evidence that anyone in Mexico was currently targeting Doe as a cooperator and no background evidence to suggest that he would likely be forcibly recruited and then found out. Could you address these subsidiary observations of the IJ? Yes, Your Honor. The IJ stated that she was giving limited weight only for the failure to interview. She didn't provide any additional explanation for why she was giving limited weight. So even if she had concerns about the recruitment, she didn't say that that's why she was giving limited weight. And this court, based on the Chenery Doctrine, can't go back and plug in and surmise as to what those reasons were for rejecting the expert's conclusions. And she doesn't provide any explanation beyond just that an interview was not conducted. And certainly an interview being conducted would not necessarily provide any further information related to recruitment. Turning to the acquiescence issue, the IJ and BIA also erred in ruling that Mr. Doe did not meet the second prong of the Convention Against Torture, government acquiescence. The IJ erroneously rejected Mr. Doe's acquiescence claim because the Mexican government is taking steps to prevent torture by the CJNG. This is erroneous. Acquiescence turns on the Mexican government's ability to prevent torture at the hands of the CJNG, not its willingness to do so. This court has frequently remanded cases to the BIA to consider whether the preventative efforts of some government actors can foreclose the possibility of government acquiescence. The Ninth and the Seventh Circuit have emphatically ruled that mere efforts to prevent torture are not enough and they are right. For example, in Mendoza-Sanchez v. Lynch, the Seventh Circuit ruled that it is success rather than efforts that bear on the likelihood of a person being tortured or killed. Mere efforts are also contrary to the plain language of the statute. Acquiescence under the CAT is proven when, more likely than not, torture will be inflicted with the consent or acquiescence of a public official, a public official meaning one. So even if there are efforts at, say, the federal level, the fact that there are local police departments, for example, that are infiltrated with CJNG corruption is enough to prove acquiescence. Dr. Jones's report is replete with unrefuted evidence of ways in which the Mexican government is corrupt and in cahoots with the CJNG. Law enforcement is on the cartel's payroll and law enforcement fails to respond to cartel violence. I see my time is nearly up, so in closing I'd ask this court to keep in mind what happened here. Mr. Doe cooperated with the U.S. government in their efforts to prosecute the CJNG and now that same government is sending him to his death at the hands of the CJNG. This court should grant Mr. Doe's petition and direct the agency to vacate Mr. Doe's order of removal. Thank you. Thank you. Good morning. May it please the Court. Brendan Hogan for the government. Just to clarify exactly what the petitioner's claim in this case is, First of all, he did meet with federal prosecutors, but he did not provide evidence about high-level cartel members. They told him, thanks for meeting with us, but you're not telling us anything relevant. Does he provide evidence on his co-defendants? No, Your Honor, he did not. At least there's nothing in the record that would support that. In this case, they became angry with him. He did tell them, I'm going to meet with federal prosecutors, and that made them angry. It's unclear why. But all they said to him is, you're going to regret that. And under the torture regulations, that is not something that is so severe that it causes mental suffering. It's not imminent and concrete. His only other interaction with his colleagues was two of them were arguing for an unknown reason. He was not involved. And at the end, one of his co-defendants said, you're really going to regret this. And never did anything. Again, telling somebody they'll regret something does not rise to the level of torture. And then the final incident was one of his co-defendants told a patron at a barber shop, who then told a barber, who then told Mr. Doe, that his co-defendants found him to be a rat. And that's it. No one ever approached him. No one ever did anything to him. That's very remote. There's a Facebook posting from this person, I believe it's a Marvel villain, just saying, I know how to hide a dead body. Mr. Doe alleges that's directed towards him. There's no proof of that. This is the only evidence the immigration judge had to consider regarding a likelihood of torture by his former colleagues. Did his co-defendants know he was meeting with the prosecutor? Yes, he told them. And then for months after that, while they were in criminal detention, they did nothing. They said nothing. They certainly didn't physically accost him. And then when he was in immigration proceedings, he was in federal immigration custody, it was at least one defendant, which he mentions during his, or co-defendant, during his immigration proceedings, and that person did nothing. He did not threaten Mr. Doe. He certainly did not physically accost him. With regards to the weight of the evidence given to the expert. Did he get a different sentence than his co-defendants? It was commensurate with two of them. Two others got, I believe, a year or two longer. But they all were basically the same conviction, which was possession with intent to distribute at least 500 grams of cocaine and conspiracy to distribute 500 grams of cocaine. At least one of them was released before Mr. Doe. Two of them had commensurate sentences. Getting to the expert's report. And he alleges that his co-defendants are CGMG cartel members. He says that, Your Honor, but there's really not much. The board, they did not accept that they were actually CGMG members. He accepted that they were part of a criminal conspiracy. And the problem here is that his co-defendants never mentioned the cartel to him, to the point where he said during proceedings, I'm not sure which cartel they actually belong to. And, again, getting to the weight of the evidence from the expert's report, the immigration. Before you turn to that, I just wanted to understand a little bit better. I mean, the IJ credited his testimony. He made allusions to CGMG cartel members, but you're saying that he equivocated as to whether it's which and who. He didn't. I'm sorry, I didn't mean to interrupt. Go ahead. He didn't equivocate, Your Honor. He was just pointing out in the first instance that first, the petitioner himself isn't even sure what criminal organization that his co-defendants are affiliated with. And then proceeded, I guess you could say to give him the benefit of the doubt or just to make sure he covered all bases in this case, that even if they are with the CGMG, nothing they've done to you rises to the level of torture. And you haven't shown why they would go after you in the future, particularly because in the expert's report, the expert says that the CGMG acts with impunity and is ruthless, and that if you talk to federal law enforcement in this country, they murder your immediate relatives. Well, Mr. Doe has a mother and a son living in Mexico. He claims that his co-defendants know that they're there and where they live, the house they live in, but they've never done anything, let alone contact them. And that's something the immigration judge did point out, too. There's not much in this record other than his testimony and the Facebook postings other than the expert witness's report. That is of little probative value because, as the immigration judge pointed out, the expert did not interview him. But under the circumstances of this case, Your Honor, he should have, because, first, at the beginning of the hearing, petitioner's counsel had to disclose that the expert made a very material error, which is that he does not speak English, and the expert, I believe, said he would be targeted for speaking English. But then on top of that, the expert says that Mr. Doe is at risk because his co-defendants, the co-defendants' associates in the cartel, will easily be able to track him down in Mexico, but doesn't address Mr. Doe's admission that they already know where his relatives are and haven't done anything. And the expert goes on to say that relatives of Mr. Doe would be in peril, but doesn't say why the ones who are there have never been accosted. And, finally, the expert needed- I'm sorry. It's a little strange to me to say, gee, it's okay, because his mother and son have to be tortured before he can claim he's going to be tortured. With respect, Your Honor, that is not what the immigration judge concluded. He wasn't saying you have to show me proof that they've been tortured. He was just pointing out that the cartel doesn't seem very interested in you if they've never even contacted your mother and child who are there in Mexico. In addition to the fact that all of the co-defendants and Mr. Doe's family live in the same area in New York and no one interacts, they feel nervous, which is understandable, but nothing has ever happened. And that's something the immigration judge took into consideration as well. And just one last point to circle back to the expert witness's report. The expert witness says that Mr. Doe would be tortured for having tattoos, but that contradicts Mr. Doe's statement at pages 4, 2 to 4, 7 of the record, I believe, where he said, I'm concerned about my tattoos, but maybe nothing will happen. He never really said that that's something that's going to happen to him. That's just something that the expert concluded, but it's not really something Mr. Doe himself developed in the hearing before the immigration judge. Why wasn't it legal error to essentially discount the expert's conclusions on the basis of the lack of an interview? Well, the immigration judge accepted the factual conclusions. They stipulated to that at the end of the merits hearing. But the immigration judge, in accepting that stipulation, I believe, clarified to Petitioner's Counsel, I'm accepting that your expert would testify consistently with what's in this statement. I'm not accepting the expert's legal conclusions. And I think that is the thrust of the immigration judge's decision here, which is that, okay, even taking into consideration your factual conclusions, there's other record evidence, such as the background country conditions report, which don't support those conclusions. And on top of, as we've already discussed, the reasons to find that it's not probative, the immigration judge did not disregard the expert witness's report, but had ample reasons to give it less reduced weight. But if the judge, the immigration judge, accepted Dr. Job's conclusions, as you say it did, why was he not granted relief under the cap? Because that was not so compelling or persuasive, Your Honor. There's all this other evidence. So just a little torture is okay. But not the legal conclusions that what would happen to him would rise to the level of torture, Your Honor. That was the immigration judge's point. And again, there is ample evidence in the record supporting the immigration judge's decision, particularly the country conditions reports. And just one last point about the acquiescence standard. This court has already set forth what the standard is in cases like this one in both De La Rosa and Quintanilla. And that is that when law enforcement authorities at least take some steps to curtail private actors, what the agency has to do is to evaluate the evidence. And just because the law enforcement in a particular country is taking effort doesn't mean that the petitioner will always fail. But it certainly doesn't mean that he's always going to win either. And in this case, the immigration judge had ample evidence to show that the Mexican authorities are taking steps to curtail this cartel. The cartel leader at the time of the hearing was in hiding because the Mexican government had offered a reward for his capture. The Mexican authorities had captured the cartel leader's son and extradited him to the United States. The Mexican authorities had disrupted the cartel's money laundering networks to the extent that the federal affidavit that led to the wiretap of the petitioner in this case has a notation that the Mexican authorities were the ones who provided the biographical information for at least some of Mr. Doe's co-defendants. Counsel, for years didn't OIL, that's the office you're from, didn't they resist relying on country conditions at all? And now you're citing it to us? I believe that the government's point was that country conditions alone are not sufficient to meet your burden, Your Honor. It's not that you should never rely on country conditions. But now you're citing it to us as in behalf of your argument. It's just one component of the immigration judge's decision, Your Honor, but it's not the only reason. Thank you. Thank you. A few points on rebuttal, Your Honors. To further address Judge Livingston's question regarding subsidiary factual findings, there's a substantial difference in the fact that Mr. Doe has not been attacked in New York versus not being attacked in Mexico. The CJNG does not run rampant in the United States. The state and federal government actors in New York have cartels well controlled, whereas in Mexico it's clear from Dr. Jones' report that the cartels have infiltrated every aspect of law enforcement. But what about his mother and son, as Judge Sack asked? The BIA did not rely on the fact that his mother and son had not been tortured in finding that there was no likelihood of torture. So under the Chenery Doctrine, this court can't go back and plug that in as a reason. Further, respondents position that there is no evidence that the co-defendants are affiliated with the CJNG misses the mark. The fact that the Lopez family has CJNG connections was part of a federal wiretap application. Furthermore, the BIA on Special Appendix 24 stated the respondent has identified specific CJNG affiliated individuals he fear will torture him. So we can rely on the BIA for this proposition that there are CJNG connections with the co-defendants. And finally, respondent pointed out that the information that Doe provided to law enforcement wasn't helpful. But it doesn't matter whether law enforcement thought that the information was helpful. What matters is that his co-defendants knew that he was informing and what they thought of it. And going back for a moment to your question about the mother and the son. There's no evidence in the record one way or the other about whether the mother or son has been tortured. And again, the BIA did not rely on that. And for those reasons, we'd ask you to vacate Doe's order of removal and grant him deferral of removal under the cap. Thank you. Thank you all. Well argued.